**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOANN M. TAKACS, | ) | CASE NO. 1:20-CV-02120 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.,* | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Joann M. Takacs (Plaintiff), challenges the final decision of Defendant Kilolo

Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying her application for

Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§

416(i), 423 *et seq*. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is

before the undersigned United States Magistrate Judge pursuant to an automatic referral under

Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the

Magistrate Judge recommends that the Commissioner's final decision be REVERSED and

REMANDED for proceedings consistent with this opinion.

**I. Procedural History**

Plaintiff applied for DIB on May 17, 2017, alleging a disability onset date of March 14,

2017. (R. 8, Transcript (Tr.) 137-145). The application was denied initially and upon

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a
party." Fed.R.Civ.P. 25(d).

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).

(Tr. 47-97). Plaintiff participated in the hearing on January 23, 2019, was represented by

counsel, and testified. (Tr. 30-46). A vocational expert (VE) also participated and testified. *Id*.

On March 15, 2019, the ALJ found Plaintiff not disabled. (Tr. 25). The Appeals Council denied

Plaintiff's request to review the ALJ's decision on July 18, 2020, and the ALJ's decision became

the Commissioner's final decision. (Tr. 1-6).

Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have

completed briefing in this case. (R. 10, 11 & 12). Plaintiff asserts the following assignments of

error: (1) the ALJ failed to properly evaluate the medical opinion evidence, and (2) the ALJ

failed to properly evaluate Plaintiff's subjective statements. (R. 10, PageID# 856).

## II. Evidence

### A. Relevant Medical Evidence[2]

#### 1.  Treatment Records

On April 10, 2017, Plaintiff saw her treating psychiatrist Philip Fischer, M.D., and was

prescribed Lamictal. (Tr. 273-274).

Plaintiff saw Manjot Kang, M.D., for a prescription refill on May 1, 2017, and record notes

she "has no other concerns." (Tr. 622). Plaintiff reported a history of chronic depression that is

worsening, feeling fearful and anxious, loss of joy, and feeling exhausted when around loved

ones. *Id*. Despite Plaintiff's report, the doctor's review of symptoms indicated no anxiety or

---

[2]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised. The court also includes some portions that are tangentially relevant to Plaintiff's psychiatric treatment where they were expressly referenced by the ALJ as a basis for discounting the opinions of Plaintiff's mental health treatment providers.

depression. (Tr. 623). On physical examination, Plaintiff's judgment and insight were intact; mood and affect were normal. (Tr. 623; Exh. 12F/96). Dr. Kang advised Plaintiff to continue care with her psychiatrist. (Tr. 631).

On May 5, 2017, Plaintiff saw psychiatrist Manjula Shah, M.D., and Patel Reddy, PA-C, after switching from Dr. Fisher due to issues with insurance coverage. (Tr. 523). Plaintiff reported an increase in feelings of sadness and depression, high anxiety/stress, increased social isolation, weight loss, change in sleep, and increases confusion/memory problems. *Id*. She reported being assaulted as a teen. (Tr. 526). Plaintiff was independent regarding activities of daily living. (Tr. 529). With respect to mental status, Plaintiff had short-term memory problems and concentration issues. *Id*. Objective findings/mental status examination revealed Plaintiff had proper hygiene, was emotionally distressed and appeared tearful, and had a depressed mood with considerable psycho-motor retardation. (Tr. 521). She had "[n]o recent panic episodes reported since she stopped working. Thought content indicates no delusions or hallucinations. Memory in [sic] intact for recent and remote events. Patient has good insight with poor judgment." (Tr. 522). She was diagnosed with major depressive disorder with anxious distress-recurrent episode, and chronic PTSD. *Id*. Recommended treatment included pharmacological management, behavioral health counseling, and CPST. (Tr. 531).

On June 9, 2017, Plaintiff saw Dr. Shah, and reported medications help "only to some extent," and that Lorazepam was not helping much. (Tr. 518). Objective findings/mental status examination describes Plaintiff as "tense, nervous with tearful demeanor. Mood is anxious with mood congruent affect and nervous disposition. Denies any kind of hallucinations or delusions. Sleep is reportedly disturbed and restless, despite being on Seroquel." *Id*.

On July 7, 2017, Plaintiff was seen by Dr. Shah reporting medical compliance but "feeling

the same." (Tr. 516). Objective findings/mental status examination revealed Plaintiff was neatly dressed, appearing tense and anxious, often with tearful demeanor. *Id*. She reported anxiety talking to anyone new, and feeling apprehensive and nervous when she has to come out of the house and does not want to interact with anyone. *Id*. Dr. Shah increased her dose of Lamotrigine and prescribed Viibryd, Seroquel, and Lorazepam. (Tr. 517).

On August 9, 2017, Plaintiff saw Dr. Kang, M.D., to follow up on the results of her COPD test. (Tr. 598, Exh. 12F). On examination, Plaintiff's judgment and insight were intact; mood and affect were normal. (Tr. 603; Exh. 12F/71).

Plaintiff returned to Dr. Shah on August 11, 2017, reporting her medications were less helpful with anxiety than before, and she was shifted to Xanax. (Tr. 514). Plaintiff appeared more relaxed, her mood was euthymic with congruent affect. *Id*. She had no formal thought disorder and her insight into her problems was fair. *Id*.

On October 16, 2017, Plaintiff was seen by Dr. Shah and reported compliance with medications; seeing a case manager, with whom she had a good rapport, weekly; continued distress and "'inner tension," anhedonia, feeling "empty inside;" mild but manageable panic episodes; and no changes in her anxiety despite her switch to Xanax. (Tr. 512). Objective findings/mental status examination revealed Plaintiff was neatly dressed, had good personal hygiene, depressed mood with congruent affect, mild psychomotor retardation, slow but spontaneous speech with low volume, and memory and cognition were intact. *Id*. Dr. Shah discontinued Xanax and refilled Viibryd, Seroquel, and Lamictal. (Tr. 513).

Plaintiff saw Dr. Shah on December 18, 2017, and reported no major difference in her condition. (Tr. 509). Objective findings/mental status examination revealed Plaintiff was appropriately dressed and had good personal hygiene, her mood was depressed and somewhat

anxious, her thought content focused on various physical health issues, her thought process was fairly goal directed, and her cognitive abilities were fairly intact. *Id*. Plaintiff's medications were continued unchanged. (Tr. 510).

On February 19, 2018, Plaintiff reported to Dr. Shah that her anxiety was better, but she was still not comfortable going out. (Tr. 506). She was having palpitations, and reported being informed that her palpitations were due to her anxiety level. *Id*. Objective findings/mental status examination revealed Plaintiff was appropriately dressed with good personal hygiene, appeared less anxious, had rapid speech with a normal volume, linear and goal-directed thought process, and she self-reported obsession with her mental and physical problems. *Id*. She continued to struggle with intrusive memories of past traumatic events. *Id*. She was noted to be fairly stable on her current medications, which remained unchanged. (Tr. 507).

On March 21, 2018, Plaintiff saw Dr. Kang for a follow up regarding a "bad cough w/chest burning." (Tr. 550; Exh. 12F). On examination, Plaintiff's judgment and insight were intact; mood and affect were normal. (Tr. 555; Exh. 12F/23).

On April 30, 2018, Plaintiff was seen at a Community Behavioral Health Center. (Tr. 789; Exh. 19F). Plaintiff was assessed with major depressive disorder with chronic anxious stress and PTSD. (Tr. 791). Plaintiff's speech was "slow, free and spontaneous. She interrupts between her speech, and her tone of speech is low." (Tr. 790). Her thought process was focused on her chronic depression and struggles. (Tr. 790-91). Her insight and judgment appeared fair. (Tr. 791; Exh. 19F/15). Plaintiff's mood was depressed, but she reported her anxiety was better. *Id*. She had mild to moderate psychomotor retardation. She cried during the interview. *Id*. Plaintiff reported that her "therapist thinks that I'm not progressing, and she wants to refer me to another therapist." (Tr. 790). The treatment record is unsigned. (Tr. 792).

On May 10, 2018, Plaintiff saw therapist Darlene D. Foth, ATR-BC, PCC-S, on referral from physician assistant Patel Reddy[3] for admission into an intensive outpatient program (IOP) for treatment of depression and anxiety. (Tr. 742). On mental status exam, Plaintiff had normal speech, thought content, thought process, and behavior with good insight/judgment. (Tr. 747). Her mood was depressed and tearful with a flat affect. *Id*.

Plaintiff saw physician assistant Patel Reddy, PA-C, on August 24, 2018. (Tr. 785-788; Exh. 19F). She reported attending an intensive outpatient program to which her case manager would take her. (Tr. 786). Plaintiff's speech had low volume, was rapid and anxious. (Tr. 787; Exh. 19F/11). Her thought process showed some thought overlap; she had fairly good insight and fairly appropriate judgment; and adequate fund of knowledge; fairly intact associations; she complained of forgetfulness and lapses in memory; and her mood was anxious and depressed. *Id*.

On August 30, 2018, Plaintiff saw Keming Gao, M.D., on referral from Dr. Shah for an evaluation concerning electroconvulsive therapy (ECT).[4] (Tr. 748-755). On mental status examination, Plaintiff had clear speech, a depressed and anxious mood, a suspicious and restricted affect, normal attention/concentration, intact cognition, and good insight/judgment. (Tr. 754, Exh. 16F/36). The doctor's summary described Plaintiff with bipolar II disorder, depressed, recurrent, severe with psychosis; severe generalized anxiety disorder (GAD); social phobia; and chronic PTSD. *Id*. Dr. Gao observed that Plaintiff had "not responded to medications," and discussed the possibility of ECT, and the associated possible risks that

---

[3] The provider's note incorrectly identified PA Reddy as Dr. Patel.

[4] According to the American Psychiatric Organization, "Electroconvulsive therapy (ECT) is a medical treatment most commonly used in patients with severe major depression or bipolar disorder that has not responded to other treatments." *See* https://www.psychiatry.org/patients-families/ect (last accessed Jan. 20. 2022).

included permanent memory loss and death. *Id*. Plaintiff indicated she wanted to pursue ECT as soon as possible. *Id*.

On September 13, 2018, Plaintiff's therapist noted Plaintiff had an anxious and depressed mood, poor attention and concentration, and slowed motor behavior, but good judgment and fair insight. (Tr. 762).

On December 4, 2018, Plaintiff was seen by physician assistant Reddy. (Tr. 777-780). Plaintiff reported taking her medications regularly, and that even an increased dose of Hydroxyzine has not helped her anxiety. (Tr. 778). She reported continued palpitations, chronic anxiety, and occasional nightmares. *Id*. She indicated therapy was slowly helping. *Id*. She had no abnormal movements or tremors, normal rate and volume of speech, logical and goal-directed thought process, fairly good insight with appropriate judgment, and a "foggy" memory and some forgetfulness. (Tr. 779). PA Reddy indicated that Plaintiff's "mood continues to be anxious, tearful and depressed. Affect is mood congruent with psychomotor retardation and tearful demeanor." *Id*. Hydroxyzine was discontinued, and Plaintiff was given new prescriptions for Propranolol to reduce palpitations and anxiety, and Diazepam to help with anxiety and muscle tenseness. (Tr. 780).

## 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On March 8, 2017, Plaintiff's treating psychiatrist Philip Fischer, M.D., wrote a letter indicating that he treated Plaintiff for major depression, recurrent, severe; and post-traumatic stress disorder (PTSD). (Tr. 262). He opined Plaintiff "cannot function in the work place" and recommended she apply for disability. *Id*.

On April 5, 2017, Dr. Fischer completed a Disability Impairment Questionnaire, indicating he had treated Plaintiff since June 23, 2014, and most recently treated her on February 28, 2017.

7

(Tr. 268). He diagnosed major depression, recurrent, severe, and PTSD. *Id*. He identified clinical signs and symptoms supporting his diagnosis as "sad mood, anhedonia, insomnia, panic attacks, social withdrawal, low self-esteem, hopelessness + helpless feelings, impaired concentration, low energy, avolition." *Id*. Her medications included Viibyrd, Lamictal, Latuda, and Lorazepam; she also received individual psychotherapy. (Tr. 269). Dr. Fischer opined that Plaintiff's symptoms were likely to increase in a competitive work environment. (Tr. 271). He explained that Plaintiff's "severe depression and anxiety … has only partially responded to aggressive treatment." (Tr. 272). Dr. Fischer estimated Plaintiff would be absent from work more than three times per month as a result of her impairments or treatment. *Id*.

On May 17, 2017, Dr. Fischer completed a checkbox-style Mental Impairment Questionnaire indicating he had not seen Plaintiff since February 28, 2017, and reiterated the same diagnoses as before. (Tr. 420). Dr. Fischer indicated Plaintiff's diagnoses and assessment was supported by the following signs and symptoms: depressed mood; persistent or generalized anxiety; labile affect; feelings of guilt or worthlessness; suicidal ideation; difficulty thinking or concentrating; fear and paranoia; anhedonia; decreased energy; deeply ingrained, maladaptive patterns of behavior; motor tension and psychomotor retardation; slowed speech; social withdrawal or isolation; and insomnia. (Tr. 421). Plaintiff's most frequent and/or severe symptoms were dysphoria, anhedonia, anxiety, and demoralization. (Tr. 422). Dr. Fischer assessed marked limitations in Plaintiff's ability to complete a workday without interruptions from psychological symptoms, and moderate-to-marked limitations in several other areas. (Tr. 423). He indicated Plaintiff would miss work more than three times a month as a result of her impairments. (Tr. 424).

On September 18, 2017, Plaintiff underwent a consultative psychological evaluation at the

request of the State Agency. (Tr. 479, Exh. 8F). The examination was performed by psychologist Herschel Pickholtz, Ed. D., who concluded Plaintiff was "a reliable and accurate respondent and informant and the overall findings and conclusions and findings are consistent with her current levels of functioning at the present time." (Tr. 487). She stated she cannot work because she cannot handle stress. (Tr. 480). She reported experiencing depression every day, described her current levels of anxiety as mild to moderate, and indicated that "[t]he symptoms involving her mood swings and mania are controlled." (Tr. 481).

On mental status examination, Plaintiff's "quality and quantity of her responses during the cognitive section of the evaluation fell within the extremely low ranges of functioning which is inconsistent with her placement in regular classes in school and she states she was an average student up until she went to the 8th grade. However, she stated she also earned a GED at age 19, which suggests much higher levels of intellectual functioning than were portrayed during the cognitive section of the evaluation." (Tr. 483; Exh 8F/6). With respect to speech, thought-content and structure, Plaintiff's speech was intelligible, fairly logical, coherent, relevant and goal-oriented; her tone was severely depressed. *Id*. "Her overall capacities for associative thinking and cognitive levels of functioning varied greatly between the average and the extremely low range of functioning. (Tr. 484). Her affect and mood appeared to be "severely depressed," her facial expressions were extremely constricted, she cried multiple times during the evaluation, and she had extremely low energy and was slow to respond. (Tr. 483-84). Dr. Pickholtz saw no signs of agitation, hostility, or mood swings. (Tr. 484). With respect to anxiety, Dr. Pickholtz noted signs of autonomic activity during the evaluation, such as trembling hands and quivering voice. *Id*. Her overall level of intellectual functioning yielded an IQ in the extremely low range, and her

capacity to define words fell in the borderline range.[5] (Tr. 484-85). Dr. Pickholtz observed that Plaintiff "doesn't take care of her hygiene on a regular basis. She does very little house work. At the prese[n]t time, she's not socializing with many people. The impact of her current psychiatric complaints relative to work functioning suggests a very serious impairment at the present time with corroboration from her current creators of very little improvement in her psychiatric status." (Tr. 486).

Dr. Pickholtz opined that Plaintiff had a "serious impairment" in her ability to understand, remember, and carryout complex instructions and that she was "somewhat impaired" with respect to simple work activities and 1-2 step tasks, while seriously impaired in her capacities to perform 3-4 step tasks. (Tr. 487). She was "at least" somewhat impaired in her ability to respond to supervision and to coworkers. *Id*. Finally, Dr. Pickholtz opined that Plaintiff's capacity to handle the stresses and pressures of work was seriously limited despite her medications and counseling. *Id*.

On September 27, 2017, state agency psychologist Paul Tangeman, Ph.D., opined that Dr. Pickholtz's opinion was considered "persuasive as it is consistent with other medical evidence." (Tr. 55). Dr. Tangeman completed a mental RFC assessment finding Plaintiff had moderate limitations in understanding and remembering detailed instructions and was capable of simple, routine tasks. (Tr. 56). She was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, to perform within a schedule and maintain attendance, and to work in coordination with others. (Tr. 57). Dr.

---

[5] Dr. Pickholtz noted that "[t]here was a real discrepancy between the responses to the cognitive section of the evaluation and premorbid levels of intellectual functioning in accordance with prior levels of academic achievement and work history." (Tr. 485).

Tangeman explained Plaintiff was "[c]apable of interacting with coworkers, supervisors and the general public, occasionally, on a superficial basis." *Id*. Dr. Tangeman also opined that "Clmt can adapt to a setting in which duties are routine and predictable. Changes should be well-explained and introduced slowly. The claimant's ability to handle stress and pressure in the work place is reduced but adequate to handle the stresses of routine work that did not involve timed tasks or rate quotas." (Tr. 58).

On October 4, 2017, treating psychiatrist Dr. Shah completed a checklist-style Psychiatric Impairment Questionnaire. (Tr. 490-494). Dr. Shah indicated she first saw Plaintiff on May 5, 2017 and last saw her on August 11, 2017, and had diagnosed chronic PTSD and major depressive disorder with recurrent anxious distress. (Tr. 490). Dr. Shah listed psychosocial factors as an inability to hold a job due to workplace anxiety and distress, history of adverse childhood events, multiple chronic medical problems, social isolation, and an inadequate support system. *Id*. Plaintiff's medications included Viibyrd, Lamictal, Seroquel, and Xanax; Plaintiff had not required inpatient treatment. *Id*. Dr. Shah indicated Plaintiff's diagnoses and assessment was supported by the following signs and symptoms: depressed mood; persistent or generalized anxiety; constricted affect; feelings of guilt or worthlessness; illogical thinking; difficulty thinking or concentrating; poor recent memory; fear and paranoia; weight change; change in personality; decreased energy; motor tension and psychomotor retardation; social withdrawal or isolation; and a fragmented sleep pattern. (Tr. 491). Plaintiff's depression, anxiety, and intrusive recollections of traumatic experiences were her most severe and/or frequent symptoms. (Tr. 492). Dr. Shah checked a box indicating Plaintiff "experience[s] episodes of decompensation or deterioration in a work or work-like setting which causes them to withdraw from the situation and/or experience an exacerbation of symptoms." *Id*. Dr. Shah opined that Plaintiff had

11

"marked" limitations in her ability to: (1) understand, remember and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or near others without being distracted by them; (4) complete a workday without interruptions from psychological symptoms; (5) interact appropriately with the public; (6) respond appropriately to workplace changes; (7) travel to unfamiliar places or use public transportation; and (8) set realistic goals. (Tr. 493). Dr. Shah also assessed a number of moderate to marked limitations. *Id*. She indicated Plaintiff would miss work more than three times a month as a result of her impairments. (Tr. 494).

On December 16, 2017, state agency psychologist Deryck Richardson, Ph.D., opined that Plaintiff had marked limitations in two areas of functioning—interacting with others and maintaining concentration, persistence or pace. (Tr. 69). Dr. Richardson's RFC echoes the findings of Dr. Tangeman. (Tr. 71-73).

Dr. Shah completed a second checklist-style Psychiatric Impairment Questionnaire on May 8, 2018. (Tr. 698-702). She most recently saw Plaintiff on April 30, 2018. The diagnoses remained unchanged from the earlier questionnaire, except that it was noted Plaintiff's impairments were drug-resistant and she was considering ECT. (Tr. 698). Dr. Shah opined that Plaintiff had "marked" limitations in her ability to (1) understand, remember and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or near others without being distracted by them; (4) complete a workday without interruptions from psychological symptoms; (5) perform at a consistent pace without unreasonable rest periods; (6) accept instructions and respond appropriately to criticism from supervisors; (7) maintain socially appropriate behavior; (8) respond appropriately to workplace changes; (9) be aware of hazards and take appropriate precautions; and (10) set realistic goals.

(Tr. 701). Dr. Shah also assessed a number of "moderate-to-marked" limitations. *Id*. The provider also noted that Plaintiff had an intense fear of making mistakes and frequent panic episodes when in the presence of others. (Tr. 702). According to Dr. Shah, Plaintiff would miss work more than three times a month as a result of her impairments. *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since March 14, 2017, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: depressive disorder and social anxiety with post-traumatic stress (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545) to perform a full range of work at all exertional levels (20 CFR 404.1567) but with the following nonexertional limitations: she can perform simple, routine tasks in a low stress environment (no fast pace, strict quotas or frequent duty changes) involving superficial interpersonal interactions with coworkers and supervisors (no arbitration, negotiation or confrontation), no interaction with the general public as a job requirement, and no exposure to hazards (heights, machinery, commercial driving) (20 CFR 404.1569a).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on ***, 1964 and was 53 years old, which is

defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 14, 2017, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-18, 20, 23-25).

**V. Law and Analysis**

**A. Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id*. However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ

failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6ᵗʰ Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.   Plaintiff's Assignments of Error**

   **1. Opinions of Treating Psychiatrists**

   In the first assignment of error, Plaintiff asserts the ALJ erred by finding the opinions from treating psychiatrists Drs. Fischer and Shah "unpersuasive." (R. 10, PageID# 870). As stated above, Plaintiff filed her application for DIB on May 17, 2017. (Tr. 137-145). Therefore, the former "treating physician rule" no longer applies, as it was eliminated by a change in social security regulations applicable to all claims filed after March 27, 2017.[6]  Nevertheless, Plaintiff asserts the ALJ failed to properly apply the new regulations, 20 C.F.R. § 404.1520c, in weighing the opinions of Dr. Fischer and Dr. Shah. (R. 10, PageID# 870).

---

[6]  Indeed, the regulations no longer use the term "treating source," instead utilizing the phrase "your medical source(s)." 20 C.F.R. § 404.1520c(a). Moreover, the change is not merely semantic, as the regulation explicitly states that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from your medical sources." *Id*. "Prior administrative findings" refers to the findings of the State Agency physicians or psychologists. 20 C.F.R. § 404.1513(a)(5). As explained by the SSA, "[c]ourts reviewing claims under [the old] rules … focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision…. [T]hese courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017).

The ALJ addressed their opinions as follows:

> Additionally, the undersigned finds the opinions of Philip Fischer, M.D., and Manjula Shah, M.D., unpersuasive. Dr. Fischer opined, the claimant "cannot function in the work place I have recommended that she apply for a medical disability plan" and would be absent from work more than three times a month (2F/1, 3F). Dr. Shah opined, the claimant has mostly moderate to marked mental limitations and would be absent from work more than three times a month (9F, 10F, 14F). As the claimant's treating providers, they were able to personally examine the claimant. However, their opinions are not sufficiently supported by or consistent with the objective findings of record, which show the claimant seeking just minimal treatment for her mental health condition and having mostly unremarkable mental status evaluations, such as being alert and oriented times three with goal directed thought process, normal speech, normal mood, normal affect, normal attention and concentration, normal memory, normal insight, normal judgment, and no indication of hallucinations, delusions, suicidal or homicidal ideations. (8F/6, 12F/23, 71, 96, 16F/36, 19F/ 11, 15).

(Tr. 23).

Although the treating physician rule no longer applies, the new regulations are not devoid of any requirements as it relates to an ALJ's duty to explain the weight assigned to medical opinions from medical providers such as Drs. Fischer and Shah.[7] An ALJ is required to articulate how he or she considered the factors of "supportability" and "consistency," which are the two "most important factors" in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b) & (c). "The factors of supportability … and consistency … are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. § 404.1520c(b)(2). "We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this

---

[7] The court notes the two medical sources provided more than one opinion. The pertinent regulations state, "We are *not* required to articulate how we considered *each* medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1) (emphasis added).

17

section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id*.

As quoted above, the ALJ determined that the opinions from Drs. Fischer and Shah were "unpersuasive," suggesting the limitations they assessed were "not sufficiently supported by or consistent with the objective findings of record…." (Tr. 23). That statement alone is merely a conclusion without any explanation. The decision furnishes two reasons for coming to such a conclusion: (1) Plaintiff ostensibly seeking "just minimal treatment for her mental health condition;" and (2) Plaintiff having "mostly unremarkable mental status evaluations" based on a rather selective citation to the record. *Id*.

First, it bears noting that the ALJ appears to have combined the supportability and consistency factors in his brief analysis.[8] The regulations state that "supportability," which is defined as "[t]he more relevant the *objective medical evidence and supporting explanations presented by a medical source* are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1) (emphasis added). Here, albeit the treating psychiatrists' opinions were contained in checkbox forms, both Drs. Fischer and Shah identified their clinical findings and observations that supported their diagnoses and

---

[8] It is not entirely clear whether a medical provider's *own* treatment records impact the supportability factor, the consistency factor, or both. While a reasonable lay interpretation may suggest consistency is the relevant factor when discussing a medical opinion provider's own treatment records, the regulations discuss consistency in terms of evidence from *other* medical sources—not the *same* source. 20 C.F.R. § 404.1520c(c)(2). In that case, depending on their content, it may be more appropriate to consider a medical opinion provider's own treatment notes under the "supportability" factor. However, the court's recommendation for a remand is not predicated on the possible transposition of these factors, as the court does not elevate form over substance.

assessments (Tr. 421-22; 491-92), as well as listing the medications they used in their treatment (Tr. 420; 490). The ALJ's decision, however, does not suggest that Drs. Fischer and Shah's opinions were bereft of supporting objective evidence *or* explanations for the limitations they assessed. In fact, it does not discuss the issue at all. Further, the ALJ's unexplained string citation to the following exhibits—8F/6, 12F/23, 71, 96, 16F/36, 19F/ 11, 15—do not contain references to any of Dr. Shah's or Dr. Fischer's *own* treatment notes. Thus, the decision cannot reasonably be construed as the ALJ finding their opinions were unsupported by their *own* treatment notes. As such, the decision failed to meaningfully discuss one of the two most important factors.

Turning to the factor of "consistency," the regulations explicitly instruct an ALJ to consider "evidence from *other* medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2) (emphasis added). The decision does purport to identify perceived inconsistencies between the opinions of Drs. Fischer and Shah versus some of the other evidence of record. (Tr. 23). The ALJ portrays Plaintiff's mental status evaluations as "unremarkable," a conclusion that appears to be his own lay interpretation of the treatment records. Further, the decision observes that Plaintiff was usually alert and oriented times three with goal directed thought process, normal speech, normal mood, normal affect, normal attention and concentration, normal memory, normal insight, normal judgment, and no indication of hallucinations, delusions, suicidal or homicidal ideations. *Id*. This characterization of the evidence is not wholly accurate, however. As evident in the court's recitation of the evidence above, Plaintiff's memory and speech were not invariably normal. Further, the conclusion that Plaintiff's mood was primarily normal misstates the totality of the evidence. As recounted above, the vast majority of the treatment notes describe Plaintiff as having various levels of depression and anxiety on mental status examination.

19

The ALJ cites three instances where Plaintiff was characterized as having a normal mood and affect—all three instances are contained in the treatment notes of Dr. Kang, who appears to have treated Plaintiff solely for her physical ailments. (Tr. 555, 603, 623). In fact, even Dr. Kang's own treatment notes acknowledge that Plaintiff had chronic depression and anxiety that had not responded to medication (*see, e.g.*, Tr. 622, 628, 630) and he encouraged Plaintiff to treat with Dr. Fischer. (Tr. 631). Without any explanation, it is unclear why the ALJ seemingly chose to invalidate the opinions of treating psychiatrists based on isolated observations of normal mood from a source that did not treat Plaintiff for her mental impairments.

As a rule, the ALJ must build an accurate and logical bridge between the evidence and the ALJ's conclusion. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004). "Where the ALJ's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Castello v. Commissioner of Social Sec.*, 5:09 CV 2569, 2011 U.S. Dist. LEXIS 13659, 2011 WL 610590, at *2 (N.D. Ohio Jan 10, 2011) (quoting *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007) (internal quotation omitted); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (the ALJ's analysis must allow reviewing court to trace the path of reasoning) (*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)).

 Perhaps more troubling, the ALJ's decision to find the assessments of Drs. Fischer and Shah unpersuasive appears to be based on the unexplained assumption that an individual who is alert and oriented, with goal directed thought process, normal attention/concentration, normal memory, normal insight/judgment, and no hallucinations, delusions, suicidal/homicidal ideation could not possibly be as functionally limited as assessed by the treating psychiatrists. While on its face, such a conclusion may appear reasonable to a layperson without expertise in the field of

20

mental health, neither the ALJ nor this court have the medical expertise to render such a medical judgment. Mental health impairments can be especially difficult to understand for those with no formal training and medical expertise in the field. Here, the ALJ's reasoning is based on unfounded assumptions. The decision also suggested that Plaintiff's treatment had been "minimal," (Tr. 23) despite the clear evidence of the use of several medications and therapy for treatment, and Plaintiff's consideration of ECT. To the extent the ALJ assumed that inpatient treatment or hospitalization is necessary before psychological symptoms can become debilitating in their severity, this constitutes an assumption without foundation. Treatment and medication decisions fall squarely into the medical judgment sphere, and an ALJ may not impermissibly displace a medical doctor's opinion based on the ALJ's lay interpretation of the evidence.[9] There was no medical expert testimony provided during or after the hearing, and the ALJ's decision lacks sufficient grounds for making the medical judgments underlying the decision's reasoning.

The court recognizes that it is the ALJ's duty to assess the medical and non-medical evidence and render an RFC finding, and that a bright line is not always apparent when carrying out this duty. But the explanation given by the ALJ for finding Drs. Fischer and Shah's opinions unpersuasive fails to provide a logical bridge and appears to stray too far into the zone of medical judgments.

---

[9] The case law is well-established that an ALJ may not substitute his or her personal interpretation of the evidence for those of trained medical professionals. *See, e.g., Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (citing *McCain v. Dir., Office of Workers' Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted); *Pietrunti v. Director, Office of Workers' Comp. Programs, United States DOL*, 119 F.3d 1035, 1044 (2d Cir. 1997); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990).

Under the revised regulations, evidence[10] from *other* medical sources, in this case State Agency psychologists Tangeman and Richardson, are also pertinent in the consideration of whether Dr. Fischer's and Dr. Shah's opinions were "consistent" under the regulations. The regulations define consistency as "[t]he more consistent a medical opinion(s) or *prior administrative medical finding(s)* is with the evidence from *other medical sources* and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2) (emphasis added). In many cases, it is conceivable that the ALJ's proper evaluation of the opinions contained in prior administrative medical finding, and corresponding decision to find such opinions persuasive, could possibly render the type of error identified herein as harmless. Here, however, the decision does not make clear why the ALJ found the opinions State Agency psychologists Drs. Tangeman and Richardson persuasive. The ALJ merely concluded that "their conclusions are supported by the objective findings in the record" (Tr. 22), and again proceeded to give the identical unexplained reasoning suggesting that: (1) Plaintiff ostensibly sought "just minimal treatment for her mental health condition;" and (2) Plaintiff had "mostly unremarkable mental status evaluations" based on exactly the same selective citation to the record. Again, these conclusions are based on the same impermissible lay interpretations of the medical evidence. Moreover, the ALJ did not explain or identify the "objective medical evidence and supporting explanations ***presented by***" Drs. Tangeman or Richardson themselves that rendered their

---

[10]  Medical evidence—for claims filed after March 27, 2017—includes both "objective medical evidence" as well as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3) & 416.913(a)(3).

opinions more supportable and, therefore, more persuasive.

Given the lack of a clear and logical explanation for the persuasiveness of the sources of record, the court recommends remanding this matter for further proceedings.

**2. Remaining Alleged Errors**

Because this court recommends finding that a remand is necessary due to the underlying decision's lack of a sufficient explanation for finding the opinions of treating psychiatrists' unpersuasive, Plaintiff's remaining arguments are not addressed in the interests of judicial economy. However, on remand, the ALJ will have further opportunity to elaborate upon the weight assigned to Plaintiff's testimony.

### VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: January 26, 2022

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.** *See Berkshire v. Beauvais,* **928 F. 3d 520, 530-31 (6th Cir. 2019).**